John P. Homchis v. Commissioner.
Homchis v. Commissioner
Docket No. 1295.
United States Tax Court
1945 Tax Ct. Memo LEXIS 246; 4 T.C.M. (CCH) 361; T.C.M. (RIA) 45117; April 6, 1945
*246 Roy F. Andes, Esq., 706 Griswold Bldg., Detroit, Mich., and Mel W. Werden, C.P.A., 7310 Woodward Ave., Detroit, Mich., for the petitioner. Paul A. Sebastian, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for 1938 and 1940 of $325.93 and $880.59, respectively. The questions in issue are: (1) Whether certain interest and capital gains received by the petitioner's wife, Mary Homchis, in the years 1938 and 1940 are taxable to the petitioner. (2) Whether for the year 1940 petitioner is entitled to deduct depreciation upon an automobile used in his business at the rate of 25 percent or at 33 1/3 percent per year. Findings of Fact The petitioner is a resident of Detroit, Mich., and filed his income tax returns for the years 1938 and 1940 with the collector of internal revenue at Detroit. He is a native of Lithuania. He came to the United States in 1910 and found employment in East St. Louis. In 1915 he went to Detroit and started a bakery business. He sold out this business in 1916 and worked as a foreman in the repair department of the Ford Motor Co. *247 from 1916 to some time in 1920 when he went back into the bakery business in the Highland Park section of Detroit. The petitioner was married on November 26, 1916, to Mary Homchis, who is also a native of Lithuania. She came to the United States in 1913. At the time of her marriage she was working for a seed company in Detroit and out of her earnings had accumulated between $400 and $500 which she had deposited in a bank. After marriage the petitioner and his wife kept their monies in a joint bank account. In 1923 the petitioner sold his bakery business in the Highland Park section for $10.000 plus the value of an inventory which was between $2,500 and $3,000. Shortly thereafter he opened another bakery business on Euclid Avenue near 12 Street in Detroit. A little later the business was moved to 5800 Dubois Street, Detroit. The name of the business was changed to Acme Pie Co. about the month of October, 1924, at which time a partnership was formed between the petitioner and Peter J. LeCody for the operation of the business. The business was moved from Dubois Street to Milwaukee Avenue in 1925, where it is presently located. From the time the petitioner went into the bakery business *248 in 1920 and for five or six years thereafter his wife, Mary Homchis, assisted in carrying on the business. She worked from 10 to 13 hours per day and received no salary, wages, or other remuneration for her work. During these years she was the mother of two children, John Homchis, Jr., born December 9, 1917, and Susanna Homchis, born April 15, 1919. Mary's mother, a widow, was living with her and the petitioner and took care of their home and children while Mary worked in the bakery. In June, 1925, the petitioner and his wife purchased lots 14 and 15 of Elmer Stone's Subdivision on Milwaukee Avenue for $4,600 and constructed a building thereon which cost $13,000 plus some extras. This property was purchased in the joint names of petitioner and his wife. In October, 1926, they purchased an adjoining lot 13 for the sum of $10,000. A house on this lot was torn down and an addition to the bakery building constructed thereon in 1927 at a cost of about $14,000 plus some extras. A second story was placed on this building in 1928 at a cost of approximately $15,000. Mortgages were outstanding on the Milwaukee Avenue property which required payments of interest and principal. Acme Pie *249 Co., operating as a partnership, made these payments for a number of years. Petitioner's wife thought that for her own protection and that of her children the legal title to the property should be vested in her. The petitioner agreed and after taking the matter up with an attorney he and his wife executed a quitclaim deed to lots 13, 14 and 15 of Elmer Stone's Subdivision to a third party, who in turn reconveyed the property to Mary Homchis alone. These deeds were not recorded but were kept in the possession of Mary Homchis for a number of years. On July 29, 1929, petitioner's wife entered into a land contract to sell to Acme Pie Co., a copartnership, lots 13, 14 and 15, above described, together with the improvements thereon, at a price of $57,000 payable $5,000 down payment and the balance at the rate of $500 monthly with 6 percent interest included in the monthly payments. The sales price of $57,000 was arrived at by taking the cost price of the land plus the cost of the construction of the building and additions thereto made during the years 1925, 1927 and 1928. The contract payments were made up to April, 1932. From that date until March, 1934, there were no further payments *250 of principal, interest or taxes. During that period Mary Homchis hereself paid the interest and the taxes upon these properties out of the funds which she had accumulated from prior payments. On March 23, 1931, Acme Pie Co. was incorporated as a Michigan corporation under the same name. At the time of incorporation the copartners assigned to the newly formed corporation all their right, title and interest in and to the land contract of July 29, 1929, between Mary Homchis, as vendor, and the copartnership, as vendee, together with all property used in connection with the operation of the partnership. The corporation likewise assumed all of the liabilities of the partnership business. The balance due on the land contract as of March 23, 1931, was $47,746.93. Mary Homchis refused to recognize the assignment of the land contract to the corporation or to release the copartners from their liability thereon to her. All monthly payments made on the land contract were made to Mary Homchis in the form of checks issued by Acme Pie Co. These monthly payments continued from the time of its execution until January 1, 1938, except for the two-year period from April, 1932, to March, 1934. The *251 corporation made up these deficiencies in payment to Mary Homchis after March, 1934. On August 18, 1936, Mary Homchis purchased in her name alone lot 16 of Elmer Stone's Subdivision adjoining the other property then owned by her, paying cash therefor in the amount of $5,500. On June 2, 1936, she entered into a contract with the petitioner and Peter J. LeCody to construct a building on this lot which would likewise be used in the corporate business. The cost of this building was approximately $23,000. On January 1, 1938, Mary Homchis, as seller, entered into a second land contract with Acme Pie Co., as purchaser, covering lots 13, 14, 15 and 16 of Elmer Stone's Subdivision, which contract called for the payment of $55,953.58. This amount was made up by taking the balance due as of that date on the original land contract of July 29, 1929, and adding thereto the sum of $28,000, which represented the cost of the additional lot 16 purchased in 1936 and the building constructed thereon during the same year. Under this second land contract the payments were increased from $500 to $650 per month, including 6 percent interest. Such payments have been continuously made to Mary Homchis *252 by checks issued by the corporation. In February or March, 1938, it was discovered by the corporation's auditor that title to lots 13, 14 and 15 of Elmer Stone's Subdivision was of record in the names of John Homchis and Mary Homchis. When this fact was called to the petitioner's attention he took the matter up with his attorney as to what should be done. The original quitclaim deed which had conveyed title to Mary Homchis in July, 1929, could not be found. The attorney then recommended that a new quitclaim deed covering lots 13, 14 and 15 of the subdivision be executed. Such quitclaim deed was executed to a third party, who in turn reconveyed the property to Mary Homchis alone, and such deeds were recorded in March, 1938. In December, 1938, the petitioner purchased the interest of Peter J. LeCody in the Acme Pie Co. Throughout the years 1938 and 1940 Acme Pie Co. made monthly payments to Mary Homchis under the land contract of January 1, 1938. Out of such payments Mary Homchis paid the interest due upon the mortgages on the property covered by the land contract and also paid off a portion of the principal. In his determination of the deficiencies in this proceeding the respondent *253 has held that the interest payments received by Mary Homchis from the Acme Pie Co. were taxable income of the petitioner and that likewise the interest payments made by Mary Homchis on the mortgages were legal deductions from the petitioner's gross income; also that the petitioner had small capital gains from installment payments on the principal paid in 1938 and 1940. Mary Homchis in her own income tax returns reported the receipt of all monies paid to her by Acme Pie Co. and also claimed deductions from her gross income of the interest paid by her on her indebtedness. During the year 1940 petitioner used an automobile in connection with his business. In his income tax return for that year he claimed depreciation upon the automobile at the rate of 33 1/3 percent of the cost. The respondent has reduced the claimed depreciation in the amount of $102.90, determining that depreciation was sustained at a rate of only 25 percent per annum. During the year 1940 the petitioner drove his automobile in connection with his business over 50,000 miles and used up two sets of tires. The life of the automobile under such usage was not in excess of 3 years. Depreciation was sustained at the rate *254 of 33 1/3 percent per annum. Opinion The principal question presented is whether the petitioner is liable to income tax upon payments made to his wife, Mary Homchis, by the Acme Pie Co., a corporation, for the calendar years 1938 and 1940. Payments were made pursuant to land contracts under which the corporation was taking title to the property known as lots 13, 14, 15 and 16 of Elmer Stone's Subdivision in the city of Detroit. In her own income tax returns Mary Homchis accounted for all monies received by her under the land contracts and claimed as a deduction from such payments the interest which she paid on the mortgages on the properties. It is the respondent's position that the petitioner is liable to income tax upon gains resulting from payments made under the land contracts by Acme Pie Co.; that although the legal title to lots 13, 14, 15 and 16 was in the name of Mary Homchis, beneficial title was in the petitioner. We are satisfied from all of the evidence that both the legal title and the equitable title to the land here in question were in Mary Homchis., that quitclaim deeds conveying the title to lots 13, 14 and 15 to Mary Homchis were executed; that the deeds were *255 not recorded because of ignorance upon the part of petitioner and of Mary Homchis that they should be recorded. The evidence shows that title to lot 16 was always in the name of Mary Homchis. There is no reason to believe that title to that lot was taken in her name for the benefit of the petitioner. The evidence does show that some of the monies paid by the Acme Pie Co. to Mary Homchis during some of the years from 1929 to 1940 were disbursed by the petitioner. There was also some laxity in the handling of the monies by Mary Homchis. But the evidence all goes to show that all of the monies paid to Mary Homchis were for her own use and that she alone was liable to pay the interest upon the mortgages resting upon her properties. The income from real estate is taxable to the owner. Mary Homchis was the owner of the lots covered by the land contracts upon which payments were made by the Acme Pie Co. Respondent was in error in holding that the petitioner was taxable upon any gains in respect of those payments. The respondent contends in the alternative that if the petitioner is not taxable upon the entire amount of the income in question he is at least taxable upon one-half of such *256 income. This is upon the theory that title to lots 13, 14 and 15 were originally taken in the joint names of the petitioner and Mary Homchis. Complete ownership of the lots was in the petitioner's wife. Therefore the petitioner is not taxable upon any of the income in question. The only other question relates to the correct amount of depreciation for 1940 on an automobile used by the petitioner in his business, the petitioner claiming an allowance for depreciation of 33 1/3 percent of the cost thereof. In the determination of the respondent the allowance was reduced to 25 percent of the cost thereof upon the theory that the useful life of the automobile was four years. We have found, however, that the useful life was only three years. The petitioner is entitled to deduct depreciation on the automobile at the rate of 33 1/3 percent per annum. Decision will be entered under Rule 50.